UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:09-CV-326-BR

| | | |
|---|---|---|
| THE COUNTRY VINTNER OF NORTH CAROLINA LLC, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | ORDER |
| E. & J. GALLO WINERY, INC., | ) ) | |
| Defendant. | ) | |

This matter is before the court on cross-motions for summary judgment and on several other non-dispositive motions. On 30 April 2010, plaintiff The Country Vintner of North Carolina, LLC ("Country Vintner") filed a motion for partial summary judgment.[1] On 25 June 2010, defendant E. & J. Gallo Winery, Inc. ("Gallo") filed a motion for summary judgment. The motions have been fully briefed and are ripe for disposition.

I. BACKGROUND

A.  Factual Background

The undisputed facts in this case are as follows: Bodegas Esmeralda ("Bodegas") is a winery that produces Alamos, an Argentinian brand of wine. (Compl. ¶ 2; Answer ¶ 2.) Prior to 1 January 2009, Billington Imports ("Billington"), a winery-importer, had the right to import and sell Alamos wines in the United States. (Compl. ¶¶ 3, 9; Answer ¶¶ 3, 9; Townsend Aff., DE # 74-1, ¶ 8 & Ex. A.) In 2005, Country Vintner became the North Carolina wholesaler of Alamos, meaning that Billington supplied Alamos to Country Vintner for distribution in North Carolina.

---

[1] Country Vintner seeks summary judgment only on the issue of liability and does not seek summary judgment on the issue of damages. See Fed. R. Civ. P. 56(d)(2). See also Pl.'s Mem. Supp. Mot. Partial Summ. J. at 6 n.2.

(Compl. ¶ 10; Answer ¶ 10; Townsend Aff., DE # 74-1, ¶ 9 & Ex. B.)

On 29 October 2008, Bodegas entered into a written supply agreement with Gallo. (Compl. ¶ 13; Answer ¶ 13; Kalabokes Decl., DE # 90-1, ¶ 5.) Pursuant to this agreement, Bodegas appointed Gallo as the new U.S. importer and primary American source of supply for Alamos, effective 1 January 2009. (Id.) As a result, Gallo succeeded Billington as the winery supplying Alamos to wholesalers in North Carolina. (Compl. ¶ 15; Answer ¶ 15.)

Starting on 1 January 2009, Gallo began to supply the Alamos brand of wines to its own wholesalers in North Carolina. (Compl. ¶ 19; Answer ¶¶ 15, 19; Henry Decl., DE # 90-11, ¶¶ 5-7.) Country Vintner has been unable to distribute Alamos wines since then. (Townsend Aff., DE # 74-1, ¶ 15 & Ex. E; Def.'s Resps. Reqs. Admis. No. 13, DE # 74-3.)[2]

B.  Procedural Background

On 11 February 2009, Country Vintner filed a petition with the North Carolina Alcoholic Beverage Control Commission ("Commission") requesting specific relief against Gallo under the North Carolina Wine Distribution Agreements Act, N.C. Gen. Stat. § 18B-1200 *et seq.* ("the Wine Act"). (Compl. ¶ 21.) On 28 May 2009, Country Vintner withdrew its petition from the Commission without prejudice. (Id. ¶ 22.)

Country Vintner then filed the instant action in Wake County Superior Court on 19 June 2009, asserting three claims under the Wine Act and an unfair and deceptive trade practice claim

---

[2] "Properly used, summary judgment helps strip away the underbrush and lay bare the heart of the controversy between the parties." Bradson Mercantile, Inc. v. Vanderbilt Indus. Contracting Corp., 883 F. Supp. 37, 49 (W.D.N.C. 1995). Beyond the few undisputed facts listed here, the court notes that the parties presented many other facts, both disputed and undisputed, in support of their claims. None of these additional factual matters are material to the disposition of the parties' motions for summary judgment.

under N.C. Gen. Stat. § 75-1.1. (Compl. ¶¶ 23-54.) On 17 July 2009, Gallo timely removed the action to this court. (DE # 1.) Gallo then moved to dismiss all of Country Vintner's claims based on lack of standing, lack of subject matter jurisdiction, and failure to state a claim upon which relief can be granted. (DE ## 5-6.) On 2 April 2010, this court denied Gallo's motion to dismiss Country Vintner's Wine Act claims but dismissed Country Vintner's unfair and deceptive trade practice claim. (DE # 63.) As previously noted, both parties have filed motions for summary judgment.

## II. DISCUSSION

A.  <u>Summary Judgment Standard</u>

Summary judgment is proper only if the "pleadings, depositions, answers to interrogatories, admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment should be granted only in those cases "in which it is perfectly clear that no genuine issue of material fact remains unresolved and inquiry into the facts is unnecessary to clarify the application of the law." <u>Haavistola v. Cmty. Fire Co. of Rising Sun, Inc.</u>, 6 F.3d 211, 214 (4th Cir. 1993). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." <u>Teamsters Joint Council No. 83 v. Centra, Inc.</u>, 947 F.2d 115, 119 (4th Cir. 1991).

B.  <u>Wine Act Claims</u>

3

Country Vintner alleges three violations of the Wine Act: (1) Gallo terminated or failed to renew the wholesaler's distribution agreement with Country Vintner without the required statutory notice, see N.C. Gen. Stat. § 18B-1205(a); (2) Gallo terminated the agreement without good cause to do so, see id. § 18B-1204; and (3) Gallo appointed new distributors of Alamos for territories covered by the agreement with Country Vintner while that agreement was in force, see id. § 18B-1203(a). (See also Pl.'s Mem. Supp. Mot. Partial Summ. J. at 10.)

In response, Gallo argues that it has not violated the Wine Act because it never had an "agreement" with Country Vintner as defined under the Wine Act. Gallo insists that Country Vintner's agreement to distribute Alamos was with Billington, and Gallo was never a party to that agreement. Since Gallo had no agreement with Country Vintner, Gallo contends that it cannot be liable to Country Vintner for terminating a nonexistent "agreement."

Both parties agree that the decisive issue in this case is whether Country Vintner had an "agreement" with Gallo under the Wine Act. The Wine Act defines an "agreement" as follows:

> "Agreement" means a commercial relationship between a wine wholesaler and a winery.[3] The agreement may be of a definite or indefinite duration and is not required to be in writing. Any of the following constitutes prima facie evidence of an "agreement" within the meaning of this definition:
>
> a. A relationship whereby the wine wholesaler is granted the right to offer and sell a brand offered by a winery;
>
> b. A relationship whereby the wine wholesaler, as an independent business, constitutes a component of a winery's distribution system;

---

[3] There is no dispute that Gallo is a "winery" as defined by the Wine Act. Gallo holds a nonresident wine vendor permit issued by the Commission and sells at least the minimum number of cases of wine required per year in North Carolina. See N.C. Gen. Stat. § 18B-1201(4). It is also clear that Country Vintner is a "wine wholesaler" by virtue of holding a permit issued by the Commission for the wholesale distribution of wine. See N.C. Gen. Stat. § 18B-1201(3). (See also Compl. ¶¶ 1, 5; Answer ¶¶ 1, 5.)

  c. A relationship whereby the wine wholesaler's business is substantially associated with a brand offered by a winery;

  d. A relationship whereby the wine wholesaler's business is substantially reliant on a winery for the continued supply of wine;

  e. The shipment, preparation for shipment, or acceptance of any order by any winery or its agent for any wine or beverages to a wine wholesaler within this State;

  f. The payment by a wine wholesaler and the acceptance of payment by any winery or its agent for the shipment of any order of wine or beverages intended for sale within this State.

N.C. Gen. Stat. § 18B-1201(1).

  A federal court applying a state statute is bound by the construction given a statute by the highest court within the state. Johnson v. Fankell, 520 U.S. 911, 916 (1997). In addition, legislative intent is a matter of state law on which the highest court in the state speaks with finality. Exxon Corp. v. Eagerton, 462 U.S. 176, 181 n.3 (1983); Mullaney v. Wilbur, 421 U.S. 684, 691 (1975). Here, the parties have not pointed to any cases in which the North Carolina Supreme Court has interpreted the Wine Act. Furthermore, the few federal cases that have interpreted the Wine Act provide little guidance since they involved questions of standing, an issue which is not present here. See, e.g., Collins Wholesale Distributing Co. v. E. & J. Gallo Winery, 867 F.2d 817 (4th Cir. 1989); Empire Distribs. of N.C., Inc. v. Schieffelin & Co., 859 F.2d 1200 (4th Cir. 1988). When there are no reported decisions on the issue in controversy, the federal court must apply the rules which it believes the North Carolina Supreme Court would adopt. In re DNA Ex Post Facto Issues, 561 F.3d 294, 300 (4th Cir. 2009) ("In interpreting a state law, we apply the statutory construction rules applied by the state's highest court."). Thus, the court will apply North Carolina's rules of statutory construction in interpreting the Wine Act.

The crux of this case is whether "a wholesaler's agreement to distribute an imported brand survives a change in the winery that imports the brand . . . ." (Pl.'s Mem. Supp. Mot. Partial Summ. J. at 7.) Country Vintner acknowledges that the Wine Act does not "expressly" address this issue. (Id.) Nevertheless, Country Vintner argues that because it distributed Alamos, it "had a legally enforceable 'agreement' under section 18B-1201(1), with the winery supplying Alamos – first Billington and then Gallo." (Id.) Country Vintner further argues that the Wine Act's definition of an agreement does not require a written contract[4] or "even that a wholesaler and a winery agree to do business in the first place." (Pl.'s Reply Supp. Mot. Partial Summ. J. at 3.) Instead, Country Vintner interprets the Wine Act as providing that an agreement exists simply by virtue of a wholesaler's distribution of a brand. As a result, Country Vintner argues, an agreement is "a wholesaler's right to the continued distribution of [a] brand." (Id. at 4) (emphasis in original).

The court disagrees with Country Vintner's interpretation of the statute. The Wine Act does not state, either expressly or by implication, that an agreement exists simply by virtue of a wholesaler's distribution of a brand. Instead, the statute clearly requires a "commercial relationship" between a winery and a wholesaler. N.C. Gen. Stat. § 18B-1201(1). A commercial relationship necessarily entails some form of commerce between the parties. See Aetna Cas. and Sur. Co. v. Fields, 414 S.E.2d 69, 72 (N.C. App. 1992) ("Blacks Law Dictionary defines commercial as 'connected with trade and traffic or commerce in general; occupied with business

---

[4] Country Vintner admits that its agreement to distribute Alamos "was never in writing, and Country Vintner did not have a written contract with Billington through which it sold Alamos in North Carolina." (Pl.'s Reply Supp. Mot. Partial Summ. J. at 2.)

and commerce.' 245 (5th ed. 1979)"). Commerce has been defined as "'[t]he exchange of goods and services'" or "'[t]rade and other business activities.'" GDF Realty Invs., Ltd. v. Norton, 326 F.3d 622, 629 (5th Cir. 2003) (quoting Black's Law Dictionary 263 (7th ed. 1999) (alteration in original)). Cf. White v. Thompson, 691 S.E.2d 676, 679 (N.C. 2010) (North Carolina's unfair and deceptive trade practice act defines commerce as "business activities[,]" and this term "connotes the manner in which businesses conduct their regular, day-to-day activities, or affairs, such as the purchase and sale of goods . . . .") (citation omitted) (internal quotation marks omitted); State ex rel. Edmisten v. J.C. Penney Co., Inc., 233 S.E.2d 895, 898 (N.C. 1977) (citing federal decisions for the proposition that commerce "comprehends intercourse for the purposes of trade in any and all its forms . . . .") (citations omitted) (internal quotation marks omitted).

Here, the undisputed evidence shows that Gallo has never had a commercial relationship with Country Vintner. None of the factors listed in N.C. Gen. Stat. § 18B-1201(1) as constituting prima facie evidence of an agreement under the Wine Act are present in this case. For example, Gallo has produced evidence to show that it never granted Country Vintner the right to sell a brand offered by Gallo and that Country Vintner was never a part of Gallo's distribution system. (See Henry Decl., DE # 90-11, ¶ 8.) Gallo has demonstrated that Country Vintner was never substantially reliant on Gallo for a continued supply of wine and that Country Vintner's business was not substantially associated with a brand offered by Gallo. (Id.) Gallo never shipped, or prepared for shipment, an order for wine or beverages to Country Vintner in North Carolina. (Id.) Gallo never accepted an order for wine from Country Vintner, and it also never accepted any payment from Country Vintner for the shipment of any order of wine or beverages intended for sale within North Carolina. (Id.; see also Townsend Aff., DE # 74-1, ¶

15 & Ex. E.) Moreover, Gallo has shown that Country Vintner was actually a "direct competitor of Gallo's wholesale distributors in North Carolina and other states within Gallo's Mid-Atlantic region." (Kalabokes Decl., DE # 90-1, ¶ 6.)

In contrast, Country Vintner has not produced any evidence to show that it has ever had a commercial relationship with Gallo. Thus, based on the undisputed evidence, the court concludes that Country Vintner and Gallo did not have an "agreement" as defined by the Wine Act.

Country Vintner argues that this conclusion does not put an end to the matter. Instead, Country Vintner further contends that the Wine Act should be construed *in pari materia* with the provisions of the Beer Franchise Law, N.C. Gen. Stat. § 18B-1300 *et seq*. Under the Beer Franchise Law, "a change in the supplier-importer of a beer brand has no effect on the distribution rights of that brand's existing wholesaler." (Pl.'s Mem. Supp. Mot. Partial Summ. J. at 8.) In support of its position, Country Vintner points to N.C. Gen. Stat. § 18B-1302(b)(4), which provides that "[a] franchise agreement . . . exists when . . . [a] supplier acquires . . . the right to distribute a product, for which a wholesaler has a franchise agreement." Furthermore, N.C. Gen. Stat. § 18B-1305, which addresses the issue of what constitutes lack of good cause to terminate or fail to renew a wholesaler's existing franchise agreement, provides:

> Absence of Good Cause. – Good cause for alteration, termination or failure to renew a franchise agreement does not include:
> . . . (3) A change in the ownership of the supplier or the acquisition by another supplier of the brewery, brand or trade name or trademark, or acquisition of the right to distribute a product, from the original supplier.

N.C. Gen. Stat. § 18B-1305(d)(3). As a result, Country Vintner argues that the Wine Act's definition of the term "agreement" should be "informed by the Beer Franchise Law's express

8

provision that imposes the legal obligations of a pre-existing agreement between a wholesaler and a supplier-importer on the new supplier-importer for the same brand." (Pl.'s Mem. Supp. Mot. Partial Summ. J. at 9.)

The court declines to read the Wine Act *in pari materia* with the Beer Franchise Law. It is axiomatic under North Carolina law that "'[w]here the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning.'" In re Estate of Lunsford, 610 S.E.2d 366, 372 (N.C. 2005) (quoting Burgess v. Your House of Raleigh, Inc., 388 S.E.2d 134, 136 (N.C. 1990) (alteration in original)); see also Diaz v. Div. of Soc. Servs., 628 S.E.2d 1, 3 (N.C. 2006). When a statute is plain and unambiguous on its face, the courts "are without power to interpolate, or superimpose, provisions and limitations not contained" in the statute itself. State v. Camp, 209 S.E.2d 754, 756 (N.C. 1974) (citation omitted) (internal quotation marks omitted); see also Philip Morris USA, Inc. v. Tolson, 626 S.E.2d 853, 859 (N.C. App. 2006) (holding that "the rules of statutory construction, including the rule of *in para materia*, do not apply in determining the meaning" of plain and unambiguous provisions). Here, the definitions of "agreement," "winery," and "wine wholesaler" contained in the Wine Act are not ambiguous or unclear, and Country Vintner does not make any arguments to the contrary. As a result, Country Vintner's argument that the Wine Act should be construed *in pari materia* with the Beer Franchise Law is without merit.[5]

Furthermore, the court would reach the same conclusion even if the statutory language were ambiguous. When a statute is ambiguous, the court may look to "other indicia of

---

[5] Similarly, because the statutory language is clear and unambiguous in this case, the court finds it unnecessary to consider the parties' arguments regarding the manner in which the Commission would interpret, or has interpreted, the Wine Act. (See Pl.'s Mem. Supp. Mot. Partial Summ. J. at 9-10; Pl.'s Reply Supp. Mot. Partial Summ. J. at 6-8; Def.'s Reply Pl.'s Mem. Opp'n Def.'s Cross-Mot. Summ. J. at 3-6.)

9

legislative will," including "legislative history." In re Proposed Assessments v. Jefferson-Pilot Life Ins. Co., 589 S.E.2d 179, 181 (N.C. App. 2003). See also Insulation Sys., Inc. v. Fisher, 678 S.E.2d 357, 360 (N.C. App. 2009). Here, a recent amendment to one of the provisions of the Wine Act demonstrates that the term "agreement" cannot be interpreted in the manner proposed by Country Vintner.

On 15 September 2010, a new version of § 18B-1213 of the Wine Act went into effect. This section addresses the obligations of a purchaser of a winery. The prior version of the statute, which was in effect at all times relevant to this case, provided in part: "The purchaser of a winery is obligated to all the terms and conditions of an agreement in effect on the date of the purchase, except for good cause, . . . ." N.C. Gen. Stat. § 18B-1213. In contrast, the new version of the statute provides as follows: "The purchaser of a winery, and any successor to the import rights of a winery, is obligated to all the terms and conditions of an agreement in effect on the date of the purchase or other acquisition of the right to distribute a brand, except for good cause, . . . ." N.C. Gen. Stat. § 18B-1213 (effective September 15, 2010) (emphases added). This recent amendment demonstrates that the North Carolina General Assembly knew how to protect a wholesaler's right to the continued distribution of a brand, yet previously chose not to do so.

Country Vintner argues that this recent amendment could simply be clarifying the original intent of the state legislature instead of substantively changing the law. However, "[i]n construing a statute with reference to an amendment, the presumption is that the legislature intended to change the law." State ex rel. Utils. Comm'n v. Pub. Serv. Co. of N.C., Inc., 299 S.E.2d 425, 429 (N.C. 1983). "This is especially so . . . when the statutory language is so drastically altered by the amendment." Id.; see also State v. Bryant, 614 S.E.2d 479, 484 (N.C.

10

2005). Furthermore, the following language from the amending legislation confirms this presumption:

> Section 25 of this act [regarding the obligations of a purchaser of a winery] is effective September 15, 2010, and its provisions shall apply to all existing wine distribution agreements. A supplier's shipment of wine to a wholesaler in North Carolina following the effective date of Section 25 of this act shall constitute acceptance by the supplier of the terms of this act and shall be incorporated into the distribution agreement between supplier and wholesaler. <u>Section 25 of this act shall be effective prospectively only and shall not apply to any administrative action pending before the ABC Commission or to pending litigation or to claims that accrued before the effective date of this act.</u>

Act of July 21, 2010, N.C. Sess. Laws 2010-122, § 29 (emphasis added).

The fact that this amendment to the Wine Act is prospective in nature, and does not apply to pending litigation, shows that the state legislature intended the amendment to change, rather than clarify, existing law. See <u>State ex rel. Utils. Comm'n</u>, 299 S.E.2d at 429 ("We also consider it significant that . . . the amendment shall not be applied retroactively. This is strong evidence that the legislature understood that the amendment occasioned a change in, rather than a clarification of, existing law."); <u>Hendrickson v. Lee</u>, 459 S.E.2d 275, 282 (N.C. App. 1995) (refusing to consider amendments as clarifications of legislative intent where the General Assembly specifically provided that the amendments did not affect "claims arising prior to" or "litigation pending on the effective date of" the amendments) (citation omitted) (internal quotation marks omitted). As a result, the court cannot accept Country Vintner's argument that the North Carolina General Assembly intended the recent statutory amendment to be a clarification of the existing law. Therefore, this change in the law clearly shows that the version of the Wine Act applicable to this case does not protect a wholesaler's brand rights when a successor to the import rights of a winery acquires the right to distribute a brand of wine.

11

Finally, Country Vintner argues that a strict interpretation of the word "agreement" undermines the purposes of the Wine Act. The Wine Act specifically states that it must be "liberally construed to promote its underlying purposes and policies." N.C. Gen. Stat. § 18B-1200(a). The enumerated purposes and policies of the Wine Act are to (1) "promote the compelling interest of the public in fair business relations between wine wholesalers and wineries, and in the continuation of wine wholesalerships on a fair basis"; (2) "protect wine wholesalers against unfair treatment by wineries"; and (3) "provide wine wholesalers with rights and remedies in addition to those existing by contract or common law . . . ." N.C. Gen. Stat. § 18B-1200(b)(1)-(3). Thus, Country Vintner argues that the Wine Act itself mandates that the term "agreement" be construed as a wholesaler's right to the continued distribution of a brand.

Although the court acknowledges the importance of the purposes and policies set forth in the Wine Act, the recent amendment to the Wine Act discussed above confirms that the statutory language in effect at all times relevant to this action was not intended to be read as liberally as Country Vintner suggests. As a result, the court rejects Country Vintner's argument with respect to this issue.

In summary, the court concludes that Country Vintner did not have an agreement with Gallo as defined under the Wine Act. As a result, the Wine Act does not apply to this case, and Country Vintner's claims regarding notice of termination, termination of the agreement without good cause, and illegal dual distributorships fail as a matter of law.

III. CONCLUSION

The court has considered all of the parties' arguments, the record of this matter, and the relevant legal precedent, and has concluded that there is no genuine issue of material fact to be

12

resolved. Accordingly, Country Vintner's motion for partial summary judgment is DENIED. Gallo's motion for summary judgment is GRANTED.

Furthermore, all of Country Vintner's motions to seal (DE ## 76, 95, 99 and 106) are DENIED AS MOOT, as the documents filed in connection with these motions were not necessary to the resolution of the issues presented in this case. Country Vintner's motion to reclassify certain "Highly Confidential" documents as "Confidential" and to modify the scheduling order (DE # 103) is also DENIED AS MOOT.

The Clerk is directed to enter judgment in favor of Gallo and close the case.

This 18 October 2010.

                                      W. Earl Britt
                                      Senior U.S. District Judge